IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-125

 No. 155PA20

 Filed 29 October 2021

 STATE OF NORTH CAROLINA

 v.
 JOHN D. GRAHAM

 Discretionary review allowed pursuant to N.C.G.S. § 7A-31 concerning the

 opinion of a divided panel of the Court of Appeals, 270 N.C. App. 478 (2020), finding

 no error in part and vacating and remanding in part an order entered on 13 December

 2016 by Judge Eric Levinson in Superior Court, Clay County1 and an order entered

 on 13 May 2019 by Judge Athena F. Brooks in Superior Court, Clay County. Heard

 in the Supreme Court on 26 April 2021.

 Joshua H. Stein, Attorney General, by Benjamin O. Zellinger, Special Deputy
 Attorney General, for the State-appellee.

 Glenn Gerding, Appellate Defender, by Daniel Shatz, Assistant Appellate
 Defender, for defendant-appellant.

 MORGAN, Justice.

¶1 This Court has limited its allowance of defendant’s petition for discretionary

 1 The Court of Appeals judge who rendered an opinion “concurring in part and
 dissenting in part” did not disagree with the lower appellate court’s majority opinion
 concerning the subject of our opinion here. See State v. Graham, 270 N.C. App. 478, 502
 (2020) (Bryant, J., concurring in part and dissenting in part). As a result, this Court afforded
 discretionary review to the issue addressed herein so as to be able to consider it.
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 review to a single issue addressed by the Court of Appeals which defendant contends

 that the lower appellate court decided in error. Pertinent to our election to review

 this case is defendant’s argument that the Court of Appeals either improperly applied

 or disregarded the appropriate test for determining whether a defendant’s out-of-

 state conviction may be counted as an elevated felony classification for purposes of

 sentencing in North Carolina trial courts as announced in State v. Sanders, 367 N.C.

 716 (2014). Because we believe that the Court of Appeals majority, with which the

 lower appellate court’s dissenting opinion agreed, properly applied the comparative

 elements test in affirming the trial court’s consideration of defendant’s conviction in

 the state of Georgia for statutory rape as equivalent to a North Carolina Class B1

 felony for the purpose of the calculation of prior record level points in criminal

 sentencing, we affirm the Court of Appeals determination and find no error.

 I. Factual and Procedural Background

¶2 Defendant was indicted on four counts each of sexual offense with a child by

 an adult and taking indecent liberties with a child by a Clay County grand jury on 11

 September 2012. Defendant’s trial began on 5 December 2016. The victim in the case,

 A.M.D.,2 testified that on multiple occasions when she was seven to eight years old,

 defendant inappropriately touched her private areas and digitally penetrated her

 2 The juvenile victim’s initials are used to obscure her identity in an effort to protect

 the victim’s privacy.
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 vagina. At the close of the State’s evidence, the State voluntarily dismissed all four

 counts of taking indecent liberties with a child, and the trial court submitted the

 remaining four counts of sexual offense with a child by an adult to the jury after both

 parties had ended their respective presentations. On 9 December 2016, the jury

 returned a verdict of guilty on one count of sexual offense with a child by an adult,

 and found defendant not guilty as to the three remaining charges. The trial court

 continued sentencing until the following week.

¶3 At the sentencing hearing on 13 December 2016, the State tendered to the trial

 court defendant’s conviction on 21 March 2001 for statutory rape in Georgia,3 as well

 as defendant’s more recent conviction on 9 April 2015 for escaping a local jail in Clay

 County, for consideration by the trial court in its calculation of defendant’s prior

 record level. In compliance with the regular procedure for trial courts in North

 Carolina, the trial court in this case utilized a standardized AOC-CR-600B form to

 determine, under a structured sentencing statutory framework, the manner in which

 defendant’s prior convictions would affect the length of active time that defendant

 would serve for his single Class B1 felony conviction in violation of North Carolina

 law for the commission of sexual offense with a child by an adult. The trial court

 3 The record reflects that the victim in defendant’s 2001 conviction for statutory rape

 in Georgia was the mother of A.M.D. It appears that after defendant was released from the
 active term that he was serving for the Georgia conviction, defendant absconded probation
 with the assistance of A.M.D.’s mother, and was invited by A.M.D.’s mother to reside with
 her and A.M.D.
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

treated defendant’s Georgia statutory rape conviction as a Class B1 felony—which

garnered defendant nine prior record points for sentencing purposes—because the

trial court regarded the Georgia statute under which defendant was convicted as

similar to North Carolina’s own statutory rape statute. In the event that the trial

court had classified defendant’s Georgia conviction in the lower felony class level of

Class I, which was an option available to the trial court, then defendant would have

been assigned only two prior record points for the Georgia conviction as the trial court

determined defendant’s sentence for his perpetration of the North Carolina criminal

offense of sexual offense with a child by an adult. Combined with one point assigned

for defendant’s previous escape conviction, defendant was assigned a total of ten prior

record level points for sentencing purposes, which automatically categorized him as

a Level IV offender for sentencing determinations. On the other hand, if the trial

court had declined to find substantial similarity between the Georgia and North

Carolina statutes at issue, then defendant would have received a total of only three

prior record level points which would have classified him as a prior record Level II

offender under North Carolina’s structured sentencing guidelines. In sentencing

defendant within the parameters of prior record Level IV, the trial court entered a

judgment of 335 to 462 months of active time of incarceration for defendant.

Defendant appealed, and the Court of Appeals panel held that the trial court did not

err as to finding substantial similarity between the Georgia and North Carolina
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 statutes.

 II. Analysis

¶4 On 21 March 2001, defendant was found guilty of the offense of statutory rape

 in the state of Georgia. He was determined to have violated section 16-6-3 of the

 Official Code of Georgia Annotated, which read as follows at the time of defendant’s

 conviction under the Georgia statute:

 (a) A person commits the offense of statutory rape when he
 or she engages in sexual intercourse with any person under
 the age of 16 years and not his or her spouse, provided that
 no conviction shall be had for this offense on the
 unsupported testimony of the victim.

 (b) A person convicted of the offense of statutory rape shall
 be punished by imprisonment for not less than one nor
 more than 20 years; provided, however, that if the person
 so convicted is 21 years of age or older, such person shall
 be punished by imprisonment for not less than ten nor
 more than 20 years; provided, further, that if the victim is
 14 or 15 years of age and the person so convicted is no more
 than three years older than the victim, such person shall
 be guilty of a misdemeanor.

 Ga. Code Ann. § 16-6-3 (2001). Expanded into its component parts, the Georgia

 statute results in a felony conviction if a defendant (1) engages in sexual intercourse

 (2) with any person (3) under sixteen years of age (4) who is not the defendant’s

 spouse, (5) unless the victim is fourteen or fifteen years of age and the defendant is

 no more than three years older than the victim.4 Ga. Code Ann. § 16-6-3. If the victim

 4 In the case at bar, defendant’s Georgia conviction was a felony offense.
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 is fourteen or fifteen years old and the defendant is within three years in age of the

 victim, then the defendant is guilty of a misdemeanor. Id.

¶5 Comparably, section 14-27.25 of the General Statutes of North Carolina stated

 the following at the time that the trial court in defendant’s matter at issue conducted

 the sentencing hearing in the present case on 13 December 2016:

 (a) A defendant is guilty of a Class B1 felony if the
 defendant engages in vaginal intercourse with another
 person who is 15 years of age or younger and the defendant
 is at least 12 years old and at least six years older than the
 person, except when the defendant is lawfully married to
 the person.

 (b) Unless the conduct is covered under some other
 provision of law providing greater punishment, a
 defendant is guilty of a Class C felony if the defendant
 engages in vaginal intercourse with another person who is
 15 years of age or younger and the defendant is at least 12
 years old and more than four but less than six years older
 than the person, except when the defendant is lawfully
 married to the person.

 N.C.G.S. § 14-27.25 (2015). The elements of the North Carolina statute require the

 State to prove that a defendant (1) engaged in vaginal intercourse (2) with another

 person (3) fifteen years of age or younger (4) who is not the defendant’s spouse, (5)

 provided that the defendant is at least twelve years of age at the time of the offense

 and (6) at least six years older than the victim to constitute a Class B1 violation of

 N.C.G.S. § 14-27.25(a), and less than six years older but more than four years older

 than the victim to constitute a Class C violation of N.C.G.S. § 14-27.25(b). N.C.G.S. §
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 14-27.25.

¶6 In calculating a defendant’s prior record level, a trial court must determine

 whether the statute under which a defendant was convicted in another state is

 substantially similar to a statute of a particular felony in North Carolina, which the

 State must show by a preponderance of the evidence. Subsection 15A-1340.14(e)

 states in pertinent part:

 Except as otherwise provided in this subsection, a
 conviction occurring in a jurisdiction other than North
 Carolina is classified as a Class I felony if the jurisdiction
 in which the offense occurred classifies the offense as a
 felony . . . . If the State proves by the preponderance of the
 evidence that an offense classified as . . . a felony in the other
 jurisdiction is substantially similar to an offense in North
 Carolina that is classified as a Class I felony or higher, the
 conviction is treated as that class of felony for assigning
 prior record level points.

 N.C.G.S. § 15A-1340.14(e) (2019) (emphasis added).

¶7 We adopt the correctness of determinations made by the Court of Appeals that

 “whether an out-of-state offense is substantially similar to a North Carolina offense

 is a question of law,” State v. Hanton, 175 N.C. App. 250, 254 (2006), and “the

 requirement set forth in N.C. Gen. Stat. § 15A-1340.14(e) is not that the statutory

 wording precisely match, but rather that the offense be ‘substantially similar,’ ” State

 v. Sapp, 190 N.C. App. 698, 713 (2008). “We review questions of law de novo.” State

 v. Khan, 366 N.C. 448, 453 (2013).

¶8 In the instant case, the trial court evaluated defendant’s conviction of statutory
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 rape in the state of Georgia to be commensurate with a Class B1 felony in North

 Carolina for sentencing purposes in the present case and hence, in assigning points

 for prior convictions, accorded nine points to the Georgia conviction. We agree with

 the determination of the lower appellate court, to which defendant appealed the trial

 court outcomes, “that the trial court did not err in finding the two offenses

 substantially similar” as Ga. Code Ann. § 16-6-3 outlaws statutory rape of a person

 who is under the age of sixteen and N.C.G.S. § 14-27.25 prohibits statutory rape of a

 person who is fifteen years of age or younger.5 State v. Graham, 270 N.C. App. 478,

 496 (2020).

¶9 Each of the statutes includes an express reference to the act of physical

 intercourse between the perpetrator of the offense and the victim; Georgia utilizes

 the phrase “engages in sexual intercourse” and North Carolina employs the

 terminology “engages in vaginal intercourse.” Both statutes employ nearly identical

 language that the act of physical intercourse is conducted by the perpetrator with

 another person and that the other person is not the offender’s spouse by virtue of a

 lawful marriage. The variations between the two statutes arise in the areas of the

 5 While the Court of Appeals recognized that “the State failed to meet its burden of

 proof” due to the State’s failure to introduce a copy of the Georgia statute into evidence
 despite the provision of the foreign enactment to the trial court for review, nonetheless the
 lower appellate court determined that this omission constituted harmless error because “the
 record contains enough information for us to review the trial court’s determination that the
 Georgia and North Carolina offenses were substantially similar.” Graham, 270 N.C. App. at
 491–92. Defendant does not challenge this determination by the Court of Appeals in the
 current appeal to us.
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 age of the statutory rape victim—Georgia, “under the age of 16 years,” and North

 Carolina, “15 years of age or younger”—and the age difference between the two

 participants which impacts the perpetrator’s degree of punishment—Georgia, “[a]

 person convicted of the offense of statutory rape shall be punished by imprisonment

 for not less than one nor more than 20 years; provided, however, that if the person so

 convicted is 21 years of age or older, such person shall be punished by imprisonment

 for not less than ten nor more than 20 years; provided, further, that if the victim is

 14 or 15 years of age and the person so convicted is no more than three years older

 than the victim, such person shall be guilty of a misdemeanor,” Ga. Code Ann. § 16-

 6-3, and North Carolina, “[a] defendant is guilty of a Class B1 felony if the defendant

 engages in vaginal intercourse with another person who is 15 years of age or younger

 and the defendant is at least 12 years old and at least six years older than the person

 . . . [and] a defendant is guilty of a Class C felony if the defendant engages in vaginal

 intercourse with another person who is 15 years of age or younger and the defendant

 is at least 12 years older and more than four but less than six years older than the

 person,” N.C.G.S. § 14-27.25.

¶ 10 Defendant argues that the Georgia statutory rape statute and the North

 Carolina statutory rape statute are not substantially similar in addressing the

 criminal offenses which they respectively prohibit in that there is no age difference

 element in the Georgia law, because unlike the North Carolina law which identifies
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 specific age differences in its felony classifications, defendant notes that “the Georgia

 statute applies equally to all persons under the age of 16 years.” He expounds upon

 this “lack of an age difference element in the Georgia statutory rape statute” by

 offering hypothetical examples of sexual intercourse which he posits would constitute

 the offense of statutory rape in Georgia but would not constitute the offense of

 statutory rape in North Carolina. Defendant submits that in a comparison of a North

 Carolina statute with another state’s statute in order to determine substantial

 similarity between the two, if the difference between the two statutes renders the

 other state’s law narrower or broader, “or if there are differences that work in both

 directions, so that each statute includes conduct not covered by the other, then the

 two statutes will not be substantially similar for purposes of the statute.”

 Additionally, defendant asserts that the Georgia law under examination here is not

 substantially similar to the North Carolina enactment to which it is being paralleled

 because the Georgia law can be violated “by conduct that is only a Class C felony . . .

 in North Carolina.” Defendant’s arguments are unpersuasive.

¶ 11 Defendant’s position conflates the requirement that statutes subject to

 comparison be substantially similar to one another with his erroneous perception that

 the two statutes must have identicalness to each other. As we previously noted in our

 recognition of Sapp, 190 N.C. App. at 713, the statutory wording of the Georgia

 provision and the North Carolina provision do not need to precisely match in order to
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 be deemed to be substantially similar. Likewise, defendant’s stance that the Georgia

 statute and the North Carolina statute cannot be considered to be substantially

 similar because not every violation of the Georgia law would be tantamount to the

 commission of a Class B1 felony under the comparative North Carolina law is

 unfounded. In applying N.C.G.S. § 15A-1340.14(e) to the case sub judice, since the

 Georgia offense of statutory rape “is substantially similar to an offense in North

 Carolina that is classified as a Class I felony or higher”—here, a Class B1 felony

 under N.C.G.S. § 14-27.25(a)—then defendant’s conviction of statutory rape in the

 state of Georgia is treated as a Class B1 felony conviction for the assignment of the

 appropriate number of prior record level points. Accordingly, the trial court in the

 instant case correctly ascertained the figure of nine points for felony sentencing

 purposes for defendant’s commission of the Georgia offense of statutory rape for

 which defendant was convicted on 21 March 2001.

¶ 12 The dissent’s view suffers from the same foundational flaw that is exhibited by

 defendant’s stance on the pivotal resolution of the question as to whether the statutes

 at issue are substantially similar to one another. Although our learned colleagues

 who would reach a different outcome in this case join defendant in confusing the legal

 concept of “substantially similar” with the aspect of identicalness, the dissenters

 further compound their unfortunate jumble of the two different measures by

 expanding the scope of “substantially similar” toward a requirement of exactitude.
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 Standing alone, neither word—“substantially” or “similar”—connotes literalness;

 therefore, when these words are combined to create the legal term of art

 “substantially similar,” this chosen phraseology reinforces the lack of a requirement

 for the statutory language in one enactment to be the same as the statutory language

 in another enactment in order for the two laws to be treated as “substantially

 similar.” Yet, the dissent here—despite the obvious essential pertinent parallels

 between the Georgia statute and the North Carolina statute—would withhold a

 recognition that the two statutes are substantially similar because all of the same

 provisions are not common to each of them. In this respect, although the dissent

 professes that it understands the difference between “substantially similar” and

 identicalness, nonetheless it appears that the dissent is so ensnared and engulfed by

 a need to see a mirrored reflection mutually cast between the two statutes that the

 dissent is compelled to promote this erroneously expansive approach.

¶ 13 With our agreement with the view of the Court of Appeals that the trial court

 did not err in finding that the two offenses which the Georgia statute and the North

 Carolina statute respectively proscribed were substantially similar, this outcome

 comports with our decision in Sanders, 367 N.C. 716. In Sanders, this Court reviewed

 the criminal offense of the state of Tennessee known as “domestic assault” and the

 North Carolina offense of assault on a female. The Sanders defendant was found by

 a jury to be guilty of robbery with a dangerous weapon, and the trial court examined
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 the defendant’s prior convictions during the trial’s sentencing phase for the purpose

 of establishing the defendant’s sentencing points. His prior convictions included the

 Tennessee offense of domestic assault.

¶ 14 We noted in Sanders that the Court previously “ha[d] not addressed the

 comparison of out-of-state offenses with North Carolina offenses for purposes of

 determining substantial similarity under N.C.G.S. § 15A-1340.14(e).” 367 N.C. at

 718. In this case of first impression, this Court held that “[d]etermination of whether

 the out-of-state conviction is substantially similar to a North Carolina offense is a

 question of law involving comparison of the elements of the out-of-state offense to

 those of the North Carolina offense.” Id. at 720 (alteration in original) (quoting State

 v. Fortney, 201 N.C. App. 662, 671 (2010)). In devising a “comparison of the elements”

 test, this Court expressly rejected the State’s argument in Sanders “to look beyond

 the elements of the offenses and consider (1) the underlying facts of defendant’s out-

 of-state conviction, and (2) whether, considering the legislative purpose of the

 respective statutes defining the offenses, the North Carolina offense is ‘suitably

 equivalent’ to the out-of-state offense.” Id. at 719. The Court’s implementation of its

 announced “comparison of the elements” test compelled us to determine that the

 Tennessee offense of domestic assault and the North Carolina offense of assault on a

 female were not substantially similar, in that the disparity in the elements of the two

 offenses regarding the genders of the parties involved and the status of their
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 relationships rendered the Tennessee and North Carolina offenses legally

 incomparable to one another for purposes of the determination of prior record level

 points. Id. at 721.

¶ 15 In attempting to equate the statutes at issue in Sanders with the statutes

 being evaluated in the present case, the dissent demonstrates its misunderstanding

 of the application of Sanders and its misinterpretation of the term “substantially

 similar.” The dissent sees no meaningful difference, for purposes of the determination

 of “substantially similar” statutes, between 1) a one-year difference in the age of early

 teenagers who are victims and 2) specified age difference delineations between

 victims and offenders in the instant case, and 1) a total elimination of one gender

 from the ability to offend and 2) the relationship status of victims and offenders in

 Sanders. In fixating on the exactness of the terminology of the respective statutes

 being compared in each of the two cases and corresponding potential outcomes which

 might be yielded in specific fact pattern scenarios which could arise in each state, the

 dissent promotes a widened view of “substantially similar” which would wrongly

 extend this Court’s holding in Sanders to require identicalness between compared

 statutes from different states and mandate identical outcomes between cases which

 originate both in North Carolina and in the foreign state. Such requirements would

 be inconsistent with our analysis in Sanders, the cited principles which we utilize

 from the Court of Appeals cases of Hanton and Sapp, and the proper construction and
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 application of the concept of “substantially similar.”

¶ 16 Despite the dissent’s concerns, we understand that it is unwise to endeavor to

 articulate a “bright-line rule” to govern a determination of whether a North Carolina

 statute is “substantially similar” to a statute from another state. While the dissent

 would establish such a standard with a test of identicalness, this guide is erroneous

 as well as incompatible with the concept of the identification of whether enactments

 of law are “substantially similar.” There are so many iterations of so many similar

 laws written in so many different ways, in North Carolina and in the forty-nine other

 states in America, that the courts of this state must necessarily possess the ability to

 operate with the flexibility that the phrase “substantially similar” inherently signifies

 in determining whether statutes which are being compared share the operative

 elements in the evaluation. While such an exercise is predictably challenging, we are

 confident that the courts of this state have sufficient guidance and flexibility to

 properly conduct the prescribed analysis of the statutes’ respective elements.

¶ 17 In applying the “comparison of the elements” test articulated in Sanders to the

 present case, the harmonious determinations of the trial court and the Court of

 Appeals here are consistent with our view that the Georgia statutory rape offense

 prohibited by Ga. Code Ann. § 16-6-3 and the North Carolina statutory rape offense

 forbidden by N.C.G.S. § 14-27.25(a) are substantially similar. Just as the State in

 Sanders was unsuccessful in its assertion that a court’s determination of whether two
 STATE V. GRAHAM

 2021-NCSC-125

 Opinion of the Court

 statutes are “substantially similar” should be premised on considerations other than

 the statute’s elements, defendant is unsuccessful here in his argument that is

 contrary to the cited statutory and case law, while being incongruous with the

 “comparison of the elements” test which supports the conclusion that the Georgia and

 North Carolina offenses at issue are substantially similar for purposes of the

 computation of defendant’s prior record level points for sentencing.

 III. Conclusion

¶ 18 The Georgia statutory rape statute under which defendant was previously

 convicted was substantially similar to North Carolina’s statutory rape statute so as

 to authorize the trial court to regard defendant’s conviction of the offense of statutory

 rape in the state of Georgia as a Class B1 felony offense for purposes of determining

 defendant’s prior record level points for sentencing purposes. The trial court did not

 err in this determination, and the Court of Appeals was correct in its subsequent

 determination to affirm the trial court on this sole issue which we have addressed

 upon discretionary review.

 AFFIRMED.
 Justice Earls dissenting.

¶ 19 An out-of-state statute is not “substantially similar” to a North Carolina

 statute within the meaning of N.C.G.S. § 15A-1340.14(e) if conduct that is proscribed

 by the out-of-state statute is lawful under the North Carolina statute. That was the

 substance of the elements-based approach to comparing criminal statutes we

 articulated in State v. Sanders, 367 N.C. 716 (2014). Despite its protestations to the

 contrary, the majority does not adhere to Sanders. The resulting decision fails to

 “giv[e] fair and clear warning” to the public of the consequences of engaging in

 criminal conduct, United States v. Lanier, 520 U.S. 259, 271 (1997), and construes

 N.C.G.S. § 15A-1340.14(e) in a way that likely “fail[s] to meet constitutional

 standards for definiteness and clarity,” Kolender v. Lawson, 461 U.S. 352, 361 (1983).

 Because the majority’s analysis will not yield an “evenhanded, predictable, or

 consistent” application of N.C.G.S. § 15A-1340.14(e), Johnson v. United States, 576

 U.S. 591, 606 (2015), I respectfully dissent.

 I. The majority’s decision is in tension with Sanders

¶ 20 In this case, the Georgia statute that the defendant, John D. Graham, violated

 is not “substantially similar” to any Class B1 felony provided by North Carolina law.

 This conclusion necessarily follows from any fair reading of Sanders.

¶ 21 In Sanders, this Court considered whether a Tennessee statute prohibiting

 individuals from assaulting any “domestic abuse victim,” Tenn. Code Ann. § 39-13-

 111(b) (2009), was “substantially similar” to the North Carolina statutory offense of
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 assaulting a female, N.C.G.S. § 14-33(c)(2) (2013). We held that it was not. Our

 reasoning was straightforward. Under the Tennessee statute, an individual was

 guilty of the specified offense if the person assaulted someone who fell within one of

 six defined categories of “domestic abuse victims.” None of these categories contained

 the requirement found in N.C.G.S. § 14-33(c)(2) that “the victim . . . be female [and]

 the assailant . . . be male and of a certain age.” Sanders, 367 N.C. at 720. Thus,

 a woman assaulting her child or her husband could be
 convicted of “domestic assault” in Tennessee, but could not
 be convicted of “assault on a female” in North Carolina. A
 male stranger who assaults a woman on the street could be
 convicted of “assault on a female” in North Carolina, but
 could not be convicted of “domestic assault” in Tennessee.

 Id. at 721. This Court unanimously agreed that because the defendant could have

 been convicted under the Tennessee statute for conduct that would not have been

 criminal under the North Carolina statute, the two statutes were not “substantially

 similar.” Id.

¶ 22 Sanders yielded two principles which should dictate the outcome of this case.

 The first principle is that “[d]etermination of whether the out-of-state conviction is

 substantially similar to a North Carolina offense is a question of law involving

 comparison of the elements of the out-of-state offense to those of the North Carolina

 offense.” Id. at 720 (alteration in original) (quoting State v. Fortney, 201 N.C. App.

 662, 671 (2010)). Accordingly, when ascertaining whether two statutes are

 substantially similar, we look only to the statutory elements of the offense, not to the
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 factual underpinnings of the defendant’s convictions.

¶ 23 The second principle is that an out-of-state criminal statute is not substantially

 similar to a North Carolina criminal statute if a defendant could be convicted under

 the out-of-state statute for acts which would not be criminal (or not criminal at the

 same offense level) if committed in North Carolina. Adherence to this principle is

 necessary to faithfully implement the elements-based approach. When all of the

 conduct targeted by an out-of-state statute is encompassed within the North Carolina

 statute it is being compared to, there is no doubt that the defendant has committed

 an offense which would garner the same number of prior record level points had the

 defendant engaged in the proscribed conduct in North Carolina. A defendant who

 previously committed an act giving rise to an out-of-state criminal conviction will

 never be sentenced more harshly than a similarly situated defendant who previously

 committed the exact same act in North Carolina. Further, the facts underlying the

 defendant’s out-of-state conviction are made irrelevant—whatever the defendant did

 to earn his or her out-of-state conviction, his or her conduct would necessarily violate

 the North Carolina statute it is being compared to.

¶ 24 The elements-based approach adopted in Sanders is not difficult to apply. That

 is, or was, its primary virtue. In this case, applying Sanders’ correct interpretation of

 N.C.G.S. § 15A-1340.14(e) dictates that Graham’s prior conviction in Georgia should

 be treated as a Class I felony for purposes of sentencing. The Georgia statute Graham
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 was convicted under, Ga. Code Ann. § 16-6-3 (2001), indisputably encompasses

 conduct which is not a Class B1 felony in North Carolina. If an eighteen-year-old

 individual has sexual intercourse with a fourteen-year-old in Georgia, that person

 has violated Ga. Code Ann. § 16-6-3. If an eighteen-year-old individual has sexual

 intercourse with a fourteen-year-old in North Carolina, that person has not violated

 any statute creating a Class B1 felony offense in this state that existed at the time

 Mr. Graham was convicted of his offense in Georgia. See N.C.G.S. § 14-27.7A(a) (2001)

 (making it a Class B1 felony “if . . . defendant engages in vaginal intercourse or a

 sexual act with another person who is 13, 14, or 15 years old and . . . defendant is at

 least six years older than the person”); N.C.G.S. § 14-27.2A(a) (2001) (making it a

 Class B1 felony “if the [defendant] is at least 18 years of age and engages in vaginal

 intercourse with a victim who is a child under the age of 13 years”); N.C.G.S. § 14-

 27.2(a) (2001) (making it a Class B1 felony “if the person engages in vaginal

 intercourse . . . [w]ith a victim who is a child under the age of 13 years and the

 defendant is at least 12 years old and is at least four years older than the victim”).

 Under Sanders, we should stop there.

¶ 25 Whatever the majority says it is doing in extending beyond this point, it is not

 applying Sanders. The point of the elements-based approach is not to engage in a

 subjective, qualitative assessment of the substance of two criminal offenses. The point

 is to enable a court to convert an out-of-state offense into an in-state offense for
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 sentencing purposes, without needing to resort to an independent inquiry into the

 factual circumstances of a defendant’s prior out-of-state conviction, and without

 creating the risk that a defendant who previously engaged in criminal conduct in

 another state will be sentenced differently than a similarly situated defendant who

 engaged in the same conduct in North Carolina.

¶ 26 The fact that Ga. Code Ann. § 16-6-3 generally targets the same kind of conduct

 as some North Carolina Class B1 felony offenses does not make the statute

 “substantially similar” under N.C.G.S. § 15A-1340.14(e). It is improper to sentence a

 defendant based upon our own intuition that most of the conduct prohibited by an

 out-of-state statute would also be prohibited by an analogous North Carolina statute.

 Cf. United States v. Davis, 139 S. Ct. 2319, 2326 (2019) (“[T]he imposition of criminal

 punishment can’t be made to depend on a judge’s estimation of the degree of risk

 posed by a crime’s imagined ‘ordinary case.’ ”). Squinting at two statutes and saying

 “close enough” is not, in this context, good enough. The majority’s freewheeling

 approach is an invitation to unchecked judicial discretion. As a result, some

 defendants will inevitably be sentenced as if they had previously committed more

 serious offenses than they actually committed.

¶ 27 The majority is also wrong to suggest that faithful application of the elements-

 based approach reflects an “erroneous perception that the two statutes must have

 identicalness to each other.” No one disputes that “substantially similar” does not
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 mean “identical.” However, the rule articulated in Sanders in no way requires the

 State to prove that an out-of-state statute is a carbon copy of the North Carolina

 statute it is being compared to.

¶ 28 Two criminal statutes may contain the same elements yet utilize different

 statutory language or be structured in different ways. For example, a hypothetical

 out-of-state statute which makes it a crime to intentionally use physical force to harm

 or threaten a female person, provided that the perpetrator is a male above the age of

 majority, would be substantially similar to N.C.G.S. § 14-33(c)(2), which makes it a

 crime for a “male person at least 18 years of age” to “[a]ssault[ ] a female.” The

 statutes would not be identically worded, but they would be substantially similar

 because both would require the State to prove the same elements in order to convict

 a defendant.

¶ 29 Similarly, two criminal statutes may contain different elements but still be

 substantially similar if all of the conduct proscribed by the out-of-state statute is

 proscribed by the North Carolina statute it is being compared to. A hypothetical out-

 of-state statute which makes it a crime to intentionally use physical force to harm or

 threaten a female person under the age of 12, provided that the perpetrator is a male

 at least twenty years old, would be substantially similar to N.C.G.S. § 14-33(c)(2),

 even though the statutes would not contain exactly the same elements, because

 anyone convicted under the out-of-state statute would necessarily have engaged in
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 conduct proscribed by N.C.G.S. § 14-33(c)(2). Sanders gave full effect to every word

 the legislature chose to include in N.C.G.S. § 15A-1340.14(e). We should in turn give

 full effect to a unanimous decision interpreting the statute, rather than depart from

 its well-reasoned principles.

 II. The majority’s reasoning creates substantial uncertainty for lower
 courts and criminal defendants

¶ 30 The majority eschews the elements-based approach we established in Sanders,

 but it is not entirely clear what has been offered as a replacement. As the majority

 acknowledges, the Georgia and North Carolina statutes at issue in this case vary “in

 the areas of the age of the statutory rape victim” and in “the age difference between

 the two participants which impacts the perpetrator’s degree of punishment.” Further,

 the majority does not dispute that an individual could engage in conduct which

 “would constitute the offense of statutory rape in Georgia but would not constitute

 the offense of statutory rape in North Carolina.” Nevertheless, the majority cursorily

 dismisses Graham’s position that the statutes are not substantially similar as

 “unfounded.” According to the majority, the State should prevail here because “[e]ach

 of the statutes includes an express reference to the act of physical intercourse

 between the perpetrator of the offense and the victim,” and the two statutes “employ

 nearly identical language that the act of physical intercourse is conducted by the

 perpetrator with another person and that the other person is not the offender’s spouse

 by virtue of a lawful marriage.”
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

¶ 31 Of course, nearly the same could be said for the statutes at issue in Sanders.

 Both of those statutes criminalized the same kind of violent conduct directed against

 statutorily defined category of victims. In Sanders, we held that two statutes were

 not substantially similar because each targeted conduct directed towards distinct

 classes of persons—“domestic abuse victims” under the Tennessee statute, “females”

 under the North Carolina statute. Here, the majority holds that the two statutes are

 substantially similar even though they target conduct directed towards distinct

 classes of persons—anyone under the age of sixteen who is not the perpetrator’s

 spouse under the Georgia statute, anyone under the age of fifteen who is not the

 perpetrator’s spouse and who is at least six years younger than the perpetrator under

 the North Carolina statute. The majority leaves lower courts, criminal defendants,

 and the public guessing as to why the distinctions we found dispositive in Sanders

 are irrelevant here.

¶ 32 The majority’s unwillingness to articulate a clear legal rule, or even a squishier

 but still bounded multifactor test, is not only in tension with Sanders. It also creates

 a significant risk of rendering N.C.G.S. § 15A-1340.14(e) unconstitutionally vague.

 Under the majority’s interpretation of N.C.G.S. § 15A-1340.14(e), an individual with

 a prior out-of-state conviction has no real way of knowing how they will be sentenced
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 if they violate a North Carolina statute.1 If the elements of the out-of-state criminal

 statute are in any way different than the elements of the North Carolina criminal

 statute it is being compared to, an individual will be tasked with speculating as to

 whether the elements are different enough to make the statutes not substantially

 similar, without any meaningful guidance from this Court. The United States

 Supreme Court has long held that precisely this kind of uncertainty is inconsistent

 with due process rights. See, e.g., United States v. Batchelder, 442 U.S. 114, 123 (1979)

 (“[V]ague sentencing provisions may pose constitutional questions if they do not state

 with sufficient clarity the consequences of violating a given criminal statute.”).

¶ 33 As a practical matter, the majority’s amorphous reasoning will confer upon

 trial courts increased discretion to determine whether two statutes are or are not

 substantially similar based solely upon their own judgment. There are some matters

 which should be left entirely to the discretion of a trial court, but determining how

 many prior record level points should be assessed for an out-of-state conviction is not

 one of them. The majority’s “grant of wholly standardless discretion to determine the

 1 The majority claims that holding the two statutes at issue in this case to be not

 substantially similar would ignore “the obvious essential pertinent parallels” between them.
 I acknowledge that the two statutes at issue here share some similarities, but the majority’s
 reasoning does not yield any principled way of discerning whether two statutes which share
 some similarities are or are not substantially similar within the meaning of N.C.G.S. § 15A-
 1340.14(e). The majority does not explain which elements are “essential” and “pertinent” and
 which are not, nor does the majority explain how closely the elements must “parallel” each
 other for two statutes to be substantially similar. Even if the outcome the majority reaches
 could be justified under N.C.G.S. § 15A-1340.14(e), the reasoning the majority deploys fails
 to provide necessary guidance to lower courts and future litigants.
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 severity of punishment appears inconsistent with due process.” Bankers Life & Cas.

 Co. v. Crenshaw, 486 U.S. 71, 88 (1988); see also Johnson, 576 U.S. at 602 (“Invoking

 so shapeless a provision to condemn someone to prison . . . does not comport with the

 Constitution’s guarantee of due process.”). Sanders circumscribed this discretion by

 requiring trial courts to conduct an objective analysis which yielded predictable

 results. The majority’s new approach places N.C.G.S. § 15A-1340.14(e) on much

 shakier constitutional ground.

¶ 34 What does remain clear after today is that a court is never permitted to engage

 in an examination of the factual underpinnings of a defendant’s out-of-state

 conviction. As the United States Supreme Court cautioned when it adopted

 something akin to the elements-based approach in the context of interpreting the

 Armed Career Criminal Act, 18 U.S.C. § 924, “the practical difficulties and potential

 unfairness of a factual approach are daunting.” Taylor v. United States, 495 U.S. 575,

 601 (1990). Practically, it is unclear what sources a court would be permitted to draw

 from when attempting to determine whether the facts giving rise to the defendant’s

 out-of-state conviction would have constituted an in-state criminal offense at the

 same level. In at least some cases—especially those resolved by plea bargain—the

 factual basis for the defendant’s out-of-state conviction might be impossible to

 surmise. Legally, because the court’s inquiry into the factual basis for an out-of-state

 conviction could lead to enhanced criminal punishment, a defendant’s Sixth
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 Amendment rights would necessarily be implicated. See, e.g., Blakely v. Washington,

 542 U.S. 296, 303 (2004) (explaining that a defendant’s Sixth Amendment rights are

 violated if the court imposes an increased sentence based upon “facts supporting [a]

 finding [that] were neither admitted by [the defendant] nor found by a jury”).

 Accordingly, although the majority departs from the approach we endorsed in

 Sanders in critical ways, nothing in today’s decision gives license to trial courts to

 sentence criminal defendants based upon ad hoc inquiries into the circumstances of

 their out-of-state convictions, a practice which would be akin to constitutionally

 dubious “collateral trials.” Shepard v. United States, 544 U.S. 13, 23 (2005).

 III. The majority’s interpretation of the phrase “substantially similar” is in
 tension with the structure and purpose of N.C.G.S. § 15A-1340.14(e)

¶ 35 At its core, this case involves a question of statutory interpretation: What did

 the General Assembly intend when it chose the phrase “substantially similar” in

 N.C.G.S. § 15A-1340.14(e)? The majority contends that the legislature did not intend

 for courts to treat statutes as substantially similar only when “the statutory wording

 precisely match[es].” True, but the structure of the provision at issue makes clear

 that finding two statutes to be “substantially similar” is an exception to the baseline

 rule, rather than the expected outcome every time a criminal defendant has a prior

 out-of-state conviction. Subsection § 15A-1340.14(e) provides that “[e]xcept as

 otherwise provided in this subsection, a conviction occurring in a jurisdiction other

 than North Carolina is classified as a Class I felony if the jurisdiction in which the
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 offense occurred classifies the offense as a felony.” (Emphasis added.) The majority’s

 reasoning threatens to make a finding of substantial similarity the default, in

 contrast to clear legislative intent. See, e.g., State v. Hogan, 234 N.C. App. 218, 228

 (2014) (“[I]f the State establishes that the defendant has an out-of-state felony

 conviction, it is by default considered a Class I felony . . . .”).

¶ 36 Moreover, it is worth noting that the majority’s reasoning cuts both ways: It is

 often a defendant who has been convicted of an offense categorized as a felony in

 another state who invokes N.C.G.S. § 15A-1340.14(e) in an effort to prove that the

 out-of-state felony offense is actually “substantially similar” to a North Carolina

 misdemeanor. N.C.G.S. § 15A-1340.14(e) (“If the offender proves by the preponderance

 of the evidence that an offense classified as a felony in the other jurisdiction is

 substantially similar to an offense that is a misdemeanor in North Carolina, the

 conviction is treated as that class of misdemeanor for assigning prior record level

 points.” (emphasis added)); see also Hogan, 234 N.C. App. at 229 (treating a New

 Jersey conviction as a Class I felony because the “defendant failed to show that

 [felony] third degree theft in New Jersey is substantially similar to a North Carolina

 misdemeanor”). Thus, by removing any reliable and clear standard for a movant to

 prove that two statutes are substantially similar, the majority’s reasoning guarantees

 both that individuals whose conduct would not be felonious under North Carolina law

 will more haphazardly be sentenced as if they had committed a felony and that
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

 individuals whose conduct would have been felonious under North Carolina law will

 more haphazardly be sentenced as if they had committed misdemeanors. This

 outcome stands in stark contrast to the design of a statute plainly intended to ensure

 that criminal defendants in North Carolina with prior out-of-state convictions are

 sentenced at parity with criminal defendants in North Carolina with prior in-state

 convictions.

 IV. Conclusion

¶ 37 Our Court does not seek to fashion clear legal rules (solely) because we are

 lawyers who, by nature and by training, tend to be persnickety. First and foremost,

 we strive for clarity because the force and legitimacy of law depends in no small part

 on its comprehensibility and predictability. Ambiguous laws are susceptible to

 unequal application under the guise of judicial discretion. The need for certainty is

 especially pronounced when interpreting statutes imposing criminal sanctions.

 See, e.g., Clark’s Charlotte, Inc. v. Hunter, 261 N.C. 222, 233 (1964) (explaining that

 a statute may be unconstitutionally vague if it fails to “warn people of the criminal

 consequences of certain conduct”); Johnson, 576 U.S. at 597 (holding a provision of 18

 U.S.C. § 924 unconstitutional because it “leaves grave uncertainty about how to

 estimate the risk posed by a crime”). The majority’s decision to trade Sanders’ clear

 legal rule for a Delphic muddle disserves these constitutional interests and produces

 an interpretation of a statute at odds with legislative intent. Therefore, I respectfully
 STATE V. GRAHAM

 2021-NCSC-125

 Earls, J., dissenting

dissent.

 Justice ERVIN joins in this dissenting opinion.